and we have Joseph Cervantes for the opponents. Good afternoon and Sharon Shanahan for the court. I'm Joseph Cervantes. I represent the defendant appellant, Mr. Judah Watkins. The issue before the court is whether the Eighth Amendment to the U.S. Constitution prohibits subjecting a juvenile defendant to a mandatory sentencing scheme that, I guess, eventually sends the defendant to jail. In this particular case, a 25-year sentence for murder combined with a mandatory 25-year enhancement for the possession of a firearm during that particular offense. The court did have discretion whether to impose 20 or 25 or more as far as that sentence is concerned. However, even at 45 years old, that would still put Judah Watkins with the way that we determined his life expectancy, the way that the Federal Bureau of Prisons determined his life expectancy. That would still put Mr. Watkins at a point where his life expectancy would be less than the mandatory sentence that the trial judge actually sentenced Mr. Watkins to. So, yes, he could have sentenced him to 45. The sentence eventually was 50. The mandatory sentence of 25 years with a firearm since has been amended so that trial judges now are allowed to use discretion in applying that enhancement. When Mr. Watkins was sentenced, that was not discretionary for trial judges. That was mandatory. In fact, in the record, the court had probably read the brief and understands that the judge actually mentions that there could be an argument with the wisdom of this mandatory enhancement. However, that's an argument for someone else. It actually shows that he did go through several factors in the sentencing, but if you go through factors but you're unable to apply them, is that really discretion? My argument would be that it is not. It shows in the record that there were numerous Miller factors mentioned. The defense attorney did an excellent job by bringing those to his attention. However, in the record, it does show that he explains, my hands are tied here, the wisdom is arguable, but this is the sentence regardless. So, the progeny of cases, the Supreme Court cases, the Miller progeny of cases, that is Atkins in 2002, Roper in 2005, of course Graham in 2011, Miller, a pivotal case in 2012 that I'm sure your honors are familiar with, and then of course Montgomery, which is pivotal, all explain that certain things need to exist. All those things explain two primary things, and that's one, that children are immature. There's nobody that's going to argue with that, but that the court is going to explain that one of the considerations for the court is going to be whether sentencing a child to life without parole is excessive for all but rare juvenile offenders. And so when Mr. Watkins was there in front of the trial court, it was the judge's discretion to consider whether this offender was beyond rehabilitation or beyond reform. In the record, it specifically states, and on page 25 of the brief, that, excuse me, 26 of the brief, the judge explains in his last quote, he says, the trial judge points out that the defendant in this case is not one of the exceptions as described in Montgomery. Again, showing that the trial court judge considered some of the Miller factors, whether this defendant was beyond reform or rehabilitation. However, when it came down to it, at the end of the day, and at the end of that sentencing hearing, even though the judge believed that he was not beyond reform or rehabilitation, against the decision of Montgomery, the judge still felt his hands were tied by explaining that the wisdom of this statute is arguable, but here's your sentence, 50 years. As a result, Judge Watkins, 17 when he was sentenced, will have no hope of release prior to his release, which he will be 67 years old. Aren't you blending the two together? You just said there was a mandatory amount of, what did you say, five years? Yeah, there was a possibility of him sentencing Mr. Watkins to 20 instead of 25. Right, so there's only five years mandatory. Correct. So if you take that off, because it was discretionary prior, it sounds like you're making the argument about the entire sentence. That's correct. You are? to hold these as consecutive. So that also tied the judge's hands. Additionally, there's also statutes that explain about reduced credit earned while they're serving. So he's serving 100% of that sentence. So he can't get day for day. He has to serve these terms consecutive, and he has to do the mandatory 25-year enhancement back in 2005. He didn't have discretion, which is contrary to what Montgomery said Miller was all about. Let me just clarify this. Was it the five years that was discretionary? He passed on five? That's correct. For the murder charge, Your Honor. But the court waived that and did exercise discretion in that respect. So it could have been, Judge Kiddo could have entered a sentence where the defendant would be out for 62. Instead, he has effect on five. That's correct. And so there was discretion there, but the progeny of cases, if reviewed, just because he gave discretion to that sentence doesn't necessarily mean that he gave discretion to the overall sentence. In fact, some of the cases, the progeny of cases, we'll mention this in both Montgomery and Graham and Miller, explain that each individual sentence should not be considered by itself. In that case, five years would be fine, but if I give him 20 sentences, then we're at 100 years. That doesn't make it okay. So we need to not just look at an individual sentence for that particular crime, but we have to look at it as a whole. He wasn't able to get more than any good time. It had to be consecutive, and we had to look at that enhancement. So together, the court should look at that sentence as a whole, Your Honor. But the Nito court in People v. Nito, a 2016 case, explains exactly how to handle juveniles who have already been convicted and sentenced. The trial court judge in Nito took into account the defendant's age during sentencing, but that was not enough under Montgomery. Montgomery said that there has to be something more than that. Basically, the Nito court shows a reasonable path to follow on how to handle juveniles who have already been sentenced to so-called de facto life sentences. That reasonable path is simply to remand the case for resentencing, and then this time, without mandatory enhancements. And the judge would now take into consideration the ability of juveniles to be rehabilitated. The Nito court was very clear that if you've already been sentenced, we simply have to resentence, but this time, without the restrictions, without the court's hands being tied. After all, it's the trial court judge that's so-called in the weeds, an argument that the state will use every day. But that's okay. If justice requires us being in the weeds, we have to be in the weeds. The judge should be, at the trial court level, able to make those decisions discretionary. As a unit, probation officers, public defenders, CASA workers, DCFS employees are in the weeds every day and should be able to make a determination collaboratively about factors that are spelled out in Miller and in Montgomery. Particularly noteworthy is a Buffer case. The Buffer case is a 2017 case, and it recognizes that courts have grappled with the definition of a de facto life sentence, whether it be 50, 60, or 70 years. And some folks feel that the question is better left to another forum. However, that specific court said that while we recognize the dilemma in trying to figure out exactly what a de facto life sentence is, whether that's 40 years or 50 years or 60 years, a complex question... Your Honor, may I finish that? You can finish your sentence or your thought, and then you'll have the opportunity for rebuttal. Thank you, Your Honor. While we recognize the dilemma in grappling with such a complex issue as what a de facto life sentence is, contrary to the State's position, we do not see how justice is better served by avoiding the question at the trial court level of what a de facto life sentence is. Thank you. Thank you, Mr. Cervantes. You'll have the opportunity to rebut. Ms. Shanahan? May it please the Court, counsel. My name is Sharon Shanahan, and I represent the people of the State of Illinois. Before beginning my actual argument, I'd like to take a moment for two things. Number one, both here in oral argument by my opponent and in the State's brief, we discuss people versus buffer. The State noted at the time the petition for me to appeal had been filed in buffer, that petition was granted. The State's brief was filed last week. If the defendant's brief is filed timely, then the case will be heard in the September docket. And the issue is, I do believe that the Supreme Court's decision in buffer will probably answer the question that is before this Court. The other thing I wanted to take into consideration, and note that, I just kind of left it hanging in my brief by saying that the request for the PLA had been requested, but it's coming down the pike, I guess, is all I can say. The other thing, Justice Overstreet and Chapman, you both asked about this sentence. Is it a 50-year mandatory minimum, or is it a 45-year old mandatory minimum? It's a 45 mandatory minimum. The 20 years for the murder and the 25 for the gun enhancement, that's 45 years. The five years that was added on there was discretionary, and as my opponent has noted to us just this afternoon, the trial court did go through the factors, and there is no doubt that those five years were discretionary and were properly added on. So what we're talking about is whether a 45-year mandatory minimum sentence for a 17-year-old violates the Eighth Amendment. So, as I noted in my opening brief, there's really not a lot of my opponent's brief that I disagree with. I mean, Broker says what he says it does. Graves says what he says it does. Meadow says what he says it does. Age and its factors are considered in sentencing a defendant to life in prison, mandatory life in prison, or to de facto mandatory life in prison. We are looking at life. And if the defendant did receive a de facto life sentence, then I would agree that he has established precedent. And that prejudice in this case should go back to the first, second stage post-conviction petition or hearing. But the question before this Court is, and not just before this Court, but obviously before the Supreme Court, for many other health courts in this state, and I suspect somewhere down the line the United States Supreme Court is what is de facto life. In People v. Reyes, everybody agreed, the defendant, the state, and the court agreed that 97 years in prison was de facto life. And the phrase they used I think is significant. It was unsurvivable. So we know that 97 years is unsurvivable. And we know that 97 years is de facto life sentence. But here we have a defendant who received a sentence where he will get out of prison at age 67. And the mandatory sentence that he got would go through age 62. Reyes gives little, if any, direction about cases like this. But other cases in the appellate court and ultimately in the Supreme Court will provide that determination. The defendant relies primarily on actuarial tables to attempt to establish that he will probably die in prison. If he has to serve until he's 67. And other defendants have made this argument and certainly Mr. Buffer made that argument and was successful in the appellate court. That's the case that's before the Supreme Court. But in People v. Jackson, very similar to this case. The defendant was charged with murder, got a 50-year sentence, would have been 66 when he was released. Jackson court declined to apply actuarial tables. The Jackson court pointed out the recent changes in the sentencing laws for juveniles showed that a juvenile can still be sentenced and get a 40-year sentence and be released when he's about 60. So we kind of know on that end that that's not a fact of life. And in Gibson, another similar case that had a whole bunch of cases or convictions put together. Some were concurrent, some were consecutive, some got day for day. But ultimately that defendant was going to be released somewhere between 59 and 60. The defendant argued actuarial tables showed that his average life expectancy was 67.8 years. And that the sentence was a life sentence in disguise. Gibson rejected reliance on actuarial tables. And it's wholly said that the defendant would have several years outside of prison and therefore his sentence did not constitute a natural life sentence without the possibility of parole. People v. Evans, yet another. I liked its language. It declined the invitation to, quote, walk into the weeds of actuarial tables to make a legal determination of likely lifespan. I did checks this morning on Westlaw. There have been two cases cited since briefing ended. Neither in one, a 15-year-old got a 40-year sentence, and that wasn't the fact of life. In another one, a 16-year-old got a 71-year-old sentence, and that was the fact of life. I don't think either one of those cases helped the determination before this court. So let's talk about these actuarial tables that the defendant says we should use to figure out whether his client got a life sentence, a de facto life sentence. It's interesting that the CDC says that his client should live to be 74.6 years old, and the IRS statistics, 83.3. That's significantly more than the 67 years that this defendant will or did receive. So even his own actuarial tables defy his argument. The source book of federal sentencing statistics does not actually provide the average life expectancy of criminal offenders. What it does say is that they needed a numerical value to include in these cases statistically. So they just decided life sentences would be reported at 470 months, which was about 39 sentences. So 39 years, excuse me. They also note in that same report that the average age of a 2012 federal offender was 36 years old. So if you assume the 470 months reflects the difference between the age at the time of sentencing and the average life expectancy, you can surmise that the average life expectancy under the federal sentencing statistics is 75 years. All of these are significantly more than what the defendant got. So I'd like to basically leave the court with this question. Look at the inherent problems in here. Is it simply a certain age? If so, what age? Does the age vary by race? Does it vary by ethnicity? Does it vary by gender? Does it vary by societal factors, health concerns? Should we consider the rising median age? Should we consider whether this one went to a good prison where he's likely to have a good relationship and that one went to another one that they didn't? This court is not a panel of actuaries, nor should it become one. Thank you. Thank you, Ms. Shanahan. Mr. Cervantes, you have three minutes. Your Honors, all the questions that counsel asked at the end, they're all great questions. And there's a lot of them. And they're not to be asked necessarily here. The best court to answer those questions is the trial court. The best courtroom to answer those questions. It's not about 97 years or 150 years or 1,000 years. There's never going to be a number, because it changes case by case. We have to remember that the idea is not a number, but more. And asking for a uniform policy is probably not going to happen very easily, because this is not about years. This is about the youth, the juvenile, being able to experience a meaningful life after incarceration. That's where all of these courts agree. Start off with Roper and Graham. And you will see dictum that explains that a juvenile is different than an adult. In the aspect of with the adult, we're looking at punishment, sometimes rehabilitation. But with the juvenile, we're always looking at rehabilitation. Always. And so we look at it as meaningful life after incarceration. She asked questions, should we consider race or should we consider where we come from, how we were raised. The answer is yes on all of those. But we consider those at the trial court level. The statistics that we use are from the Federal Bureau of Prisons, the Federal Sentencing Commission, as well as the ACLU, which states that incarceration, the earlier you're incarcerated, the more likely you are to have a shorter life. So a 30-year-old entering our Illinois Department of Corrections is going to have a higher life expectancy than an 18-year-old who enters the Illinois Department of Corrections. And to say that we can't rely on tables is in no offense to anyone, any counsel or argument. It's an absurd argument in the fact that we do so in so many other areas of the law. Anyone who's ever practiced under the Marriage and Dissolution of Marriage Act understands that there's tables that we use. I think there's contradictions in the state's argument, explaining in some cases, like Gibson, that we need a uniform policy. But on the other hand, for instance, the aggravating factors, aggravating factor number seven in the sentencing guidelines in Illinois, it requires a judge to answer an arbitrary question of what will deter crime in the future. Right? Aggravating factor number seven. This sentence is necessary to deter crime in the future. An arbitrary request. However, when it comes to having statistics and numbers, people who have been incarcerated, entered into the system, died in the system, statistics to put into a table to be able to look at and analyze, that's too much for us to handle. However, a judge can predict what will deter crime in the future. I think the argument is absurd. The court is definitely allowed and able and capable to make these types of decisions on a case-by-case basis. So when you look at the case law, you will see that some courts will find that a 45-year or 50-year or 60-year sentence is a de facto life sentence. In other cases, it may not be. And lower Montgomery says that even if it is, that's okay, as long as that juvenile is beyond reform and rehabilitation. It doesn't exclude every juvenile from those sentences. It just says that we have to consider those things. And in this case, the judge specifically explained that Judah Watkins was not one of those exceptions. One of those exceptions that should be put away and not let out. Because of that, the judge shouldn't have discretion to be able to adjust that sentence accordingly. I.e., without that mandatory 25-year enhancement. And as proof, the law after 2005 changed. The law after Miller changed, so that mandatory law that Judah was sentenced under is now discretionary. And that's the way that our society is going, is to be discretionary and to add as many factors as possible to the plate of the judge, regardless of whether he's in the weeds or not in the weeds, so that we can have the proper outcome based on the individual juvenile. We want that juvenile back in society, contributing, reformed, and rehabilitated. Thank you, Your Honors. Thank you, Mr. Cervantes. Thank you, Ms. Shanahan. For your briefs and your argument, we'll take the matter under advisement. Pleasure of ruling in due course.